IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

EDWARDS MOVING & RIGGING,
INC., a Kentucky Corporation,

   Plaintiff,

  v.

JOSH LACK, an individual, and
BARNHART CRANE AND RIGGING
COMPANY, INC., a Delaware
Corporation,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:14-cv-02100-JPM-tmp

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court are Plaintiff's Motion for Summary
Judgment (ECF No. 60) and Defendant's Motion for Summary
Judgment (ECF No. 64). For the reasons that follow, Plaintiff's
Motion is GRANTED and Defendant's Motion is DENIED.

**I.**   **BACKGROUND**

 **A.**   **Procedural Background**

Plaintiff filed its Complaint on February 10, 2014 (ECF
No. 1), and a Motion for Temporary Restraining Order ("TRO") and
Preliminary Injunction on February 28, 2014 (ECF No. 11). The
Court granted the TRO on March 5, 2014. (ECF No. 20.) The
Court enjoined Lack from continuing employment at Barnhart until
a determination in this case was ultimately made. (Id. at 8.)

Lack and Barnhart filed their respective Answers to the Complaint on March 25, 2014. (ECF Nos. 27, 28.)

Following two extensions of the TRO (ECF Nos. 30, 37), the Court entered an agreed Permanent Injunction as between Edwards and Lack on May 7, 2014. (ECF No. 50.) The agreed injunction restrains Lack from working on any "rigging and/or heavy hauling projects/assignments that are in the bidding or pre-award phases" until March 5, 2016. (Id.)

Edwards filed an Amended Complaint on July 18, 2014 (1st Am. Compl., ECF No. 57), and Barnhart answered on August 14, 2014 (Answer to 1st Am. Compl., ECF No. 58).

Edwards filed its Motion for Summary Judgment on January 12, 2015. (ECF No. 60.) Barnhart responded on February 12, 2015. (ECF No. 67.) Edwards filed a reply brief on February 27, 2015. (ECF No. 79.)

Barnhart filed its Motion for Summary Judgment on January 16, 2015. (ECF No. 64.) Edwards responded on February 16, 2015. (ECF No. 72.) Barnhart filed its reply brief on March 4, 2015. (ECF No. 81.)

The Court held a hearing on the motions for summary judgment on April 3, 2015. (Minute Entry, ECF No. 90.) With leave of Court, Edwards filed a Supplemental Brief Regarding Consequential Damages on April 8, 2015. (ECF No. 86.) Barnhart

responded on April 10, 2015. (ECF No. 87.) Edwards filed a reply on April 27, 2015. (ECF No. 92.)

**B.    Factual Background**

Edwards Moving & Rigging, Inc. ("Edwards") is a business that specializes in "the transportation and lifting of heavy and oversized equipment in the power generation, petro chemical, automotive, manufacturing, nuclear, and construction markets throughout [the] United States." (1st Am. Compl. ¶ 6.) Edwards describes its market area as the whole United States. (<u>Id.</u> ¶ 7.)

Edwards hired Josh Lack on or about September 16, 2009. (<u>Id.</u> ¶ 8.) Also on or about September 16, 2009, Lack and Edwards entered into an agreement that included non-competition, non-solicitation, and non-disclosure clauses. (1st Am. Compl. ¶ 11; ECF No. 62-4.) The non-compete section of the contract states the following:

> A.    **Non-Competition.** Employee agrees that while Employee is employed by Employer and during a period of two (2) years immediately following the termination of his employment with the Employer for any reason whatsoever, (the Term), he shall not, within Employer's market area, (the "Territory"), engage in any of the following activities:
>
> (1)    Directly or indirectly enter into the employ of or render any service to or act in concert with any person, partnership, corporation or other entity engaged in rendering any service being conducted or rendered by Employer at the time of the termination; or

(2)   Directly or indirectly engage in any such competitive business or render any such service on his own account; or

(3)   Become interested in any such competitive business or service directly or indirectly as an individual, partner, member, director, officer, principal, agent, employee, or creditor.

(ECF No 62-4 at 1, PageID 428.)   The contract includes a choice-of-law clause, which states that the agreement "shall be construed under and governed by the laws of the Commonwealth of Kentucky, excluding its conflicts of law rules."   (Id. at 3, PageID 430.)

Edwards contends that Lack was a "critical member of the Edwards team with responsibilities that included the planning, execution and oversight of highly specialized work projects . . . ."   (1st Am. Compl. ¶ 9.)   Defendant Barnhart Crane and Rigging Company, Inc. ("Barnhart") denies these allegations. (Answer to 1st Am. Compl. ¶ 9, ECF No. 58.)   Edwards further contends that Lack had no experience in rigging engineering prior to his employment with Edwards (1st Am. Compl. ¶ 10), but Barnhart also denies that assertion (Answer to 1st Am. Compl. ¶ 10).

On or about November 6, 2013, Lack gave notice to Edwards that he was resigning.   (Pl.'s Undisputed Facts in Supp. of Mot. for Summ. J. ("Pl.'s Statement of Undisputed Facts") ¶ 12, ECF No. 62; Response to Pl.'s Statement of Undisputed Facts in Supp.

of Pl.'s Mot. for Summ. J. & Barnhart Crane & Rigging Co.'s
Statement of Additional Material Facts ("Def.'s Response to
Pl.'s Statement of Undisputed Facts") ¶ 12, ECF No. 67-1.)  His
final day of employment with Edwards was November 13, 2013.
(Pl.'s Statement of Undisputed Facts ¶ 13; Def.'s Response to
Pl.'s Statement of Undisputed Facts ¶ 13.)

Edwards alleges that Lack subsequently "became employed as
a rigging engineer on heavy hauling and rigging projects for
Barnhart" (1st Am. Compl. ¶ 25), but Defendant also denies this
allegation (Answer to 1st Am. Compl. ¶ 25).  Edwards alleges
that Barnhart is a direct competitor of Edwards for heavy
hauling and rigging jobs.  (1st Am. Compl. ¶ 27.)  Barnhart
initially denied that allegation.  (Answer to 1st Am. Compl.
¶ 27.)  Barnhart now admits, however, that it "is engaged in the
industry of heavy moving and rigging" and that "Barnhart and
Edwards compete for some of the same projects/jobs."  (Pl.'s
Statement of Undisputed Facts ¶ 20; Def.'s Response to Pl.'s
Statement of Undisputed Facts ¶ 20.)

In August 2013, Lack notified Barnhart by email that he had
signed a non-compete agreement with Edwards, and sent Barnhart a
copy of another employee's non-compete agreement that he
believed to be similar to his own.  (Pl.'s Statement of
Undisputed Facts ¶ 8.)  On or about November 15, 2013, Edwards,
through counsel, notified Barnhart of the non-compete clause in

Lack's contract, "and informed Barnhart that Edwards fully intends to pursue all its rights under the agreement including interference with a contractual relationship." (1st Am. Compl. ¶ 30.)

Lack began working for Barnhart on or about December 16, 2013. (Id. ¶ 31.) Barnhart contends that the job duties for which Barnhart hired Lack "are common to the crane and rigging industry for an individual in an engineering position, and involved the use of common equipment that is routinely utilized throughout the industry; and does not involve any special or proprietary equipment or methods." (Def.'s Response to Pl.'s Statement of Undisputed Facts ¶ 8.)

## II.  **LEGAL STANDARD**

A party is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014)

(citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 587 (1986)).  "The moving party bears the initial
burden of demonstrating the absence of any genuine issue of
material fact."  Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th
Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986)).

   "Once the moving party satisfies its initial burden, the
burden shifts to the nonmoving party to set forth specific facts
showing a triable issue of material fact."  Mosholder, 679 F.3d
at 448-49 (citing Matsushita, 475 U.S. at 587; Fed. R. Civ.
P. 56(e)).  "'When the non-moving party fails to make a
sufficient showing of an essential element of his case on which
he bears the burden of proof, the moving parties are entitled to
judgment as a matter of law and summary judgment is proper.'"
Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d
911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670
F.3d 677, 680 (6th Cir. 2012) (en banc)); see also Kalich v.
AT&T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

   "To show that a fact is, or is not, genuinely disputed,
both parties are required to either 'cite[] to particular parts
of materials in the record' or 'show[] that the materials cited
do not establish the absence or presence of a genuine dispute,
or that an adverse party cannot produce admissible evidence to
support the fact.'"  Bruederle, 687 F.3d at 776 (alterations in

original) (quoting Fed. R. Civ. P. 56(c)(1)); <u>see also</u>
<u>Mosholder</u>, 679 F.3d at 448 ("To support its motion, the moving
party may show 'that there is an absence of evidence to support
the nonmoving party's case.'") (quoting <u>Celotex Corp.</u>, 477 U.S.
at 325). "Credibility determinations, the weighing of the
evidence, and the drawing of legitimate inferences from the
facts are jury functions, not those of a judge[.]" <u>Martinez</u>,
703 F.3d at 914 (alteration in original) (quoting <u>Anderson v.</u>
<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)) (internal
quotation marks omitted).

   "The court need consider only the cited materials, but it
may consider other materials in the record." Fed. R. Civ.
P. 56(c)(3). "[T]he district court has no 'duty to search the
entire record to establish that it is bereft of a genuine issue
of material fact.'" <u>Pharos Capital Partners, L.P. v. Deloitte &</u>
<u>Touche</u>, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam)
(quoting <u>Tucker v. Tennessee</u>, 539 F.3d 526, 531 (6th Cir.
2008)). "'[J]udges are not like pigs, hunting for truffles'
that might be buried in the record." <u>Emerson v. Novartis Pharm.</u>
<u>Corp.</u>, 446 F. App'x 733, 736 (6th Cir. 2011) (alteration in
original) (quoting <u>United States v. Dunkel</u>, 927 F.2d 955, 956
(7th Cir. 1991)).

   The decisive question is "whether 'the evidence presents a
sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Anderson, 477 U.S. at 251–52). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 251).

## III. **ANALYSIS**

Plaintiff's sole cause of action against Barnhart is tortious interference with contract. (1st Am. Compl. at 7–8.) In order to recover for tortious interference with contract under Tennessee law, a plaintiff must prove that: "[(1)] there was a legal contract, [(2)] of which the wrongdoer was aware, [(3)] that he maliciously intended to induce a breach, and [(4)] there must have been a breach, [(5)] proximately caused by his acts, [(6)] resulting in damages." Blake Corp. v. Diversified Sys., Inc., 229 F.3d 1150 (6th Cir. 2000) (unpublished table decision). The Court addresses each element in turn.

### C.   **The Existence of a Legal Contract**

"Kentucky courts have consistently upheld non-competition restrictions if 'they are reasonable in scope and in purpose.'" Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection,

*Inc.*, No. 3:12-CV-146-HEH, 2012 WL 1415632, at *4 (E.D. Va. Apr. 23, 2012) (quoting *Hall v. Willard & Woolsey, P.S.C.*, 471 S.W.2d 316, 317 (Ky. 1971)).  To be enforceable, a restraint must be "such only as to afford a fair protection to the legitimate interests of the [employer] and not so extensive as to interfere with the interests of the public." *Stiles v. Reda*, 228 S.W.2d 455, 456 (Ky. 1950).  "Reasonableness is to be determined generally by the nature of the business or profession and employment, and the scope of the restrictions with respect to their character, duration and territorial extent." *Hall*, 471 S.W.2d at 317–18.

Barnhart argues that the non-compete agreement at issue in this case is invalid for two reasons.  First, Barnhart contends that Edwards does not have a legitimate interest that is protected by the non-compete agreement.  (Mem. Supp. Def.'s Mot. for Summ. J. at 9–12, ECF No. 64-1.)  Second, Barnhart argues that the agreement is not sufficiently limited in duration and geographic scope.  (*Id.* at 13–16.)

Edwards disagrees for three reasons.  First, Edwards argues that because the Agreed Final Judgment of Permanent Injunction and Order Against Defendant Josh Lack contains "an acknowledgment and stipulation from Lack that the Non-Competition Agreement is a valid and enforceable contract," the law-of-the-case doctrine prevents Barnhart from now contesting

10

the validity of the contract.  (Pl.'s Response in Opposition to
Def.'s Mot. for Summ. J. at 2-5, ECF No. 72.)  Second, Edwards
argues that the geographic and temporal terms of the contract
are reasonable under Kentucky law.  (Id. at 6-8.)  Third,
Edwards argues that it has a legitimate business interest in the
"specialized knowledge, training, and confidential information"
that Lack acquired while an employee of Edwards.  (Id. at 11-
16.)

The Court agrees with Edwards that the contract is
enforceable.  The non-compete clause is reasonable in both
duration and geographic coverage under Kentucky law.  The clause
at issue only has a duration of two years, which is a duration
that has been consistently found reasonable by Kentucky courts.
See Hodges v. Todd, 698 S.W.2d 317, 318 (Ky. Ct. App. 1985)
(upholding a five-year non-compete); Lareau v. O'Nan, 355 S.W.2d
679, 680 (Ky. 1962) (same); Cent. Adjustment Bureau, Inc. v.
Ingram Associates, Inc., 622 S.W.2d 681 (Ky. Ct. App. 1981)
(upholding a two-year non-compete); Stiles v. Reda, 228 S.W.2d
455, 456 (Ky. 1950) (same).  Although the geographic restriction
is broad, Barnhart cites no Kentucky case striking down a non-
compete simply because of its geographic scope.  See Cent.
Adjustment Bureau, Inc., 622 S.W.2d at 686 (upholding a non-
compete covering the United States).  A geographic limit in a
non-compete governed by Kentucky law "is reasonable if it is

11

confined to the territory in which the employer keeps his market or carries on his business." Thomas W. Briggs Co. v. Mason, 289 S.W. 295, 298 (Ky. 1926). The non-compete clause at issue in this case is limited to Edwards' "market area." (ECF No. 62-4 at 1, PageID 428.) Accordingly, the geographic limit is reasonable under Kentucky law.

Edwards also has legitimate interests under Kentucky law that are protected by the non-compete clause. Contrary to Barnhart's assertions, a non-compete clause made for the sole purpose of protection from ordinary competition is enforceable under Kentucky law "unless very serious inequities would result." Hall, 471 S.W.2d at 318. Hall involved a physician-employee that agreed not to practice medicine within fifty miles from the city of her employment. Id. at 316. Despite the lack of any confidential information, trade secrets, or specialized skill or knowledge acquired during her employment, the Court of Appeals of Kentucky still found the non-compete clause enforceable. Id. at 318.

Although Barnhart states that the non-compete "prevents Lack from utilizing general knowledge and principles related to civil engineering" such that enforcement "would result in severe inequities," this statement is not supported by the record. It is undisputed that the service that Lack is prevented from rendering under the non-compete is "to lift and move heavy

12

objects." (Pl.'s Statement of Undisputed Facts ¶ 23; Def.'s Response to Pl.'s Statement of Undisputed Facts ¶ 23.) Lack's resumé indicates that he has significant experience in civil engineering fields unrelated to the lifting and moving of heavy objects. For example, Lack spent over a year at Peterson Engineering/WMP Construction Co. with duties in "drafting, surveying, project supervision, municipal sewer and water design, and taking projects to bid for construction." (ECF No. 64-3 at 8.) The Court finds that no "very serious inequities" would result from upholding the non-compete clause. Lack's background indicates that he has the capacity to find gainful employment as a civil engineer in an industry unrelated to the lifting and moving of heavy objects. Because the non-compete protects a legitimate business interest and is reasonable in scope and duration under Kentucky law, the Court finds that the non-compete agreement is enforceable.

### D.  Awareness of the Non-Compete Agreement

The undisputed evidence in the record demonstrates that Barnhart had knowledge of Lack's non-compete agreement.

> On or about August 21, 2013, Lack notified Jim Yates and two other Barnhart employees via email that he had entered into a non-competition agreement with Edwards. He attached a copy of a non-competition agreement between Edwards and another Edwards' employee, which Lack believed to be similar to the Non-Competition Agreement he executed.

(Pl.'s Statement of Undisputed Facts ¶ 8; Def.'s Response to Pl.'s Statement of Undisputed Facts ¶ 8.) Lack confirmed to Barnhart via email on November 11, 2013, that his non-competition agreement was the same as the other one that he had previously provided. (ECF No. 62-9.) Lack's last day of work with Edwards was on November 13, 2013. (Pl.'s Statement of Undisputed Facts ¶ 13; Def.'s Response to Pl.'s Statement of Undisputed Facts ¶ 13.) Accordingly, the Court finds that there is no genuinely disputed issue of material fact as to whether Barnhart knew of the contract.

### E.    Malice

The third element of tortious interference of contract under Tennessee law is that the alleged tortfeasor "maliciously intended to induce a breach." Blake Corp., 229 F.3d 1150. Barnhart argues that it did not maliciously intend to induce a breach because Barnhart neither "induce[d] Lack to seek employment with Barnhart, nor . . . encourage[d] Lack to leave his employment with Edwards." (Response and Mem. in Opp. to Pl.'s Mot. for Summ. J. at 18, ECF No. 67.) Edwards disagrees, arguing that although there is no evidence of ill will or spite, the Tennessee law simply requires a showing of an "intentional commission of a harmful act without justifiable cause or privilege." (Pl.'s Mem. in Supp. of It[]s Mot. for Summ. J. at 16, ECF No. 61.)

The Court agrees with Edwards. "In this context, malice is the willful violation of a known right." Edwards v. Travelers Ins. of Hartford, Conn., 563 F.2d 105, 121 (6th Cir. 1977). Barnhart knew of Edwards rights with respect to Lack, and hired him anyway. Consequently, Edwards acted with malice. Further, it is clear from the record that Barnhart intended Lack to breach. Barnhart mischaracterizes the record when it argues that it did not induce Lack to leave his employment with Edwards. Barnhart offered Lack a job, and even increased its initial offer to Lack when he notified Barnhart of his previous salary with Edwards. (Pl.'s Statement of Undisputed Facts ¶ 10; Def.'s Response to Pl.'s Statement of Undisputed Facts ¶ 10; Def.'s Statement of Undisputed Facts ¶ 8; Pl.'s Response to Def.'s Statement of Undisputed Facts ¶ 8.) "'[I]nduce' is ordinarily defined as '[t]o lead (a person), by persuasion or some influence or motive that acts upon the will,' 'to lead on, move, influence, prevail upon (any one) to do something.'" United States v. Hite, 769 F.3d 1154, 1161 (D.C. Cir. 2014) (quoting Oxford English Dictionary (2d ed. 1989)); accord United States v. Harmon, 593 F. App'x 455, 467 (6th Cir. 2014) cert. denied, 135 S. Ct. 1579 (2015). Barnhart's undisputed offer of a job -- and subsequent increased offer of salary -- acted upon Lack's will to influence him to accept the job with Barnhart. Consequently, Barnhart induced Lack breach his contract, and

therefore did so intentionally.  Accordingly, the Court finds that there is no genuinely disputed issue of material fact that Barnhart maliciously intended Lack to breach his non-compete agreement.

## F.    Breach

Edwards argues that because both Edwards and Barnhart are "engaged in the industry of heav[y] moving and rigging," they offer competing services.  (Pl.'s Mem. in Supp. of It[]s Mot. for Summ. J. at 17 (citing Cain Aff. ¶¶ 12-13 (stating that Barnhart is one of Edwards' largest competitors), ECF No. 62-2, and Barnhart Dep. 6, 27-30 (admitting that Edwards and Barnhart have bid on the same jobs), ECF No. 62-22).)  Edwards therefore argues that Lack's employment with Barnhart constitutes a breach of his non-compete agreement.  Barnhart does not respond to this argument.  The Court finds that there is no genuine dispute in the record as to whether a breach occurred when Lack began his employment with Barnhart -- Lack's employment with Barnhart constituted a breach of his non-compete agreement.

## G.    Proximate Cause

Edwards argues that it is "self-evident" that Barnhart's conduct was also a proximate cause of the breach.  (Pl.'s Mem. in Supp. of It[]s Mot. for Summ. J. at 18.)  Similar to its argument regarding lack of intent, Barnhart argues that it did not proximately cause the breach because:

> Barnhart did not actively solicit Lack, did not
> pressure Lack into accepting a position and did not
> believe they were violating the spirit of Lack's non-
> compete with Edwards.  Lack chose to quit his job with
> Edwards of his own volition and accepted a position
> with Barnhart that he actively sought when he decided
> [to] leave Edwards to relocate his family.

(Def.'s Response & Mem. in Opp. to Pl.'s Mot. for Summ. J. at
4.)

The Court agrees with Edwards.  Tennessee follows the

"substantial factor" test for proximate causation.  McClenahan

v. Cooley, 806 S.W.2d 767, 775 (Tenn. 1991) ("There is no

requirement that a cause, to be regarded as the proximate cause

of an injury, be the sole cause, the last act, or the one

nearest to the injury, provided it is a substantial factor in

producing the end result.")  Barnhart's offer of employment to

Lack was not just a substantial factor in the breach of the non-

compete agreement: Lack could not have breached his agreement

unless offered such a job by a competitor to Edwards.

Accordingly, Barnhart can point to no fact to show a genuine

dispute of fact as to proximate causation of the breach.

## H.    Damages

Barnhart argues that "Edwards has not been able thus far to

demonstrate what damages, if any, have truly resulted from Lack

being employed by Barnhart other than it[s] attorney's fees for

pursuing this lawsuit . . . ."  (Mem. Supp. Def.'s Mot. for

Summ. J. at 17.)  According to Barnhart, attorney's fees alone

17

cannot provide a basis for damages under Tennessee tort law.

(See Response to Pl.'s Supp. Br. Regarding Consequential

Damages, ECF No. 87.)

Edwards concedes that the only damages it has incurred are

"legal fees and expenses enforcing the terms and conditions of

the Non-Competition Agreement against Lack." (Pl.'s Response in

Opposition to Def.'s Mot. for Summ. J. at 19.) Edwards argues,

however, that attorney's fees and expenses in enforcing a non-

compete agreement are cognizable as damages in a tortious

interference of contract claim under Tennessee law. (Pl.'s

Supp. Br. Regarding Consequential Damages.)

During the telephonic hearing on the instant Motions, the

Court granted the Parties leave to submit supplemental briefing

addressing whether consequential damages for tortious

interference of a non-compete contract can include attorneys'

fees for the enforcement of the contract. (See Minute Entry,

ECF No. 90.) In its supplemental brief, Edwards cites to

several cases in which Tennessee courts considered attorneys'

fees to be consequential damages in other contexts. (Pl.'s

Supp. Br. Regarding Consequential Damages, ECF No. 86 (citing

Morrow v. Jones, 165 S.W.3d 254, 260 (Tenn. Ct. App. 2004)

(approving of award of attorney's fees caused by breach of

contract); Bruce v. Olive, No. 03A01-9509-CV-00310, 1996 WL

93580, at *6 (Tenn. Ct. App. Mar. 4, 1996) (same); Haney v.

<u>Copeland</u>, No. E2002-00845-COA-R3-CV, 2003 WL 553548, at *2

(Tenn. Ct. App. Feb. 27, 2003) (approving of attorney's fees

caused by breach of contract and fraud).  In response, Barnhart

argues that "[t]he American Rule simply does not permit the

recovery of attorney's fees unless attorney's fees are permitted

by contract or by statute."  (Response to Pl.'s Supp. Br.

Regarding Consequential Damages at 4, ECF No. 87.)

　　Although Barnhart's argument is well-taken, it is not

relevant to the instant case.  "Tennessee, like most

jurisdictions, adheres to the 'American rule' for award of

attorney fees."  <u>Cracker Barrel Old Country Store, Inc. v.</u>

<u>Epperson</u>, 284 S.W.3d 303, 308 (Tenn. 2009) (footnote and

citation omitted).  "Under the American rule, a party in a civil

action may recover attorney fees only if: (1) a contractual or

statutory provision creates a right to recover attorney fees; or

(2) some other recognized exception to the American rule

applies, allowing for recovery of such fees in a particular

case."  <u>Id.</u>  The American rule, however, simply prevents a

prevailing litigant from "collect[ing] a reasonable attorneys'

fee from the loser."  <u>Alyeska Pipeline Serv. Co. v. Wilderness</u>

<u>Soc'y</u>, 421 U.S. 240, 247 (1975).

　　The American rule does not apply to consequential damages

flowing from a separate harm.  Under Tennessee law, "'[o]ne who

through the tort of another has been required to act in the

19

protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, <u>attorney fees</u> and other expenditures thereby suffered or incurred in the earlier action.'" <u>Engstrom v. Mayfield</u>, 195 F. App'x 444, 451 (6th Cir. 2006) (emphasis added) (quoting <u>Pullman Standard, Inc. v. Abex Corp.</u>, 693 S.W.2d 336, 340 (Tenn. 1985)). Here, the record uniformly demonstrates that Edwards was required to act in the protection of its interests to bring a suit against Lack. That the enforcement action against Lack was joined to the instant tortious interference of contract action is of no consequence under Tennessee law. <u>Cf. id.</u> Accordingly, the Court finds that there is no genuine dispute of material fact as to whether damages were incurred as a result of the Barnhart's tortious interference with contract.

In contrast, the Court finds that the record is not clear as to the particular amount of damages the Plaintiff has suffered. In Plaintiff's response to Defendant's Interrogatory No. 2 in which Defendant requested the "dollar amount of each and every type of damage which you claim to have sustained," Plaintiff stated that its consequential damages amounted to: (1) $69,427.11 in legal fees and expenses incurred through May 31, 2014; (2) $4,976.16 in "personnel and travel expense"; and (3) $1,122.39 in advertising expenses. (ECF No. 64-4 at 3.)

Moreover, Plaintiff states that it is entitled to $226,576.98 to $300,000.00 in punitive damages. (Id.)  None of these quantities are supported by any documentation in the record. Edwards therefore is not entitled to summary judgment on the amount of damages.

**IV.** **CONCLUSION**

For the foregoing reasons, the Court finds that Defendant has failed to create a genuine dispute of material fact with respect to any element of Plaintiff's claim for tortious interference of contract.  As a result, Plaintiff's Motion for Summary Judgment is GRANTED, and Defendant's Motion for Summary Judgment is DENIED.


**IT IS SO ORDERED,** this 24th day of June, 2015.


/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE