UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

_____

|                                       |   |                         |
|---------------------------------------|---|-------------------------|
| EDWARDS MOVING & RIGGING, INC.,       | ) |                         |
|     Plaintiff,                        | ) |                         |
| v.                                    | ) | No. 2:14-cv-02100-JPM-tmp |
| BARNHART CRANE AND RIGGING CO.,       | ) |                         |
|     Defendant.                        | ) |                         |

_____

**OPINION AND ORDER FOLLOWING NON-JURY TRIAL**
_____

Plaintiff Edwards Moving & Rigging, Inc. ("Plaintiff" or "Edwards") initiated this action against Defendant Josh Lack ("Lack") for breach of contract and against Defendant Barnhart Crane and Rigging Co. ("Barnhart") for tortious interference with a contractual relationship against Barnhart. The one-day bench trial pertained only to the issue of damages for Edwards' tortious interference claim against Barnhart.

**I.    BACKGROUND**

   **A.    Factual Background**

Edwards "specializ[es] in the transportation and lifting of heavy and oversized equipment in the power generation, petro chemical, automotive, manufacturing, nuclear, and construction markets throughout [the] United States." (Am. Compl. ¶ 6, ECF No. 57.) Edwards hired Lack on or about September 16, 2009.

(Id. ¶ 8.) Also on or about September 16, 2009, Lack and Edwards entered into an agreement that included non-competition, non-solicitation, and non-disclosure clauses. (Id. ¶ 11.) Lack turned in his notice of resignation of employment from Edwards on November 6, 2013. (Id. ¶ 24.) His final day of employment with Edwards was November 13, 2013. (Pl.'s Statement of Undisputed Facts ¶ 15, ECF No. 62; Def.'s Response to Pl.'s Statement of Undisputed Facts ¶ 15, ECF No. 67-1.)

In August 2013, Lack notified Barnhart by email that he had signed a non-compete agreement with Edwards, and sent Barnhart a copy of another employee's non-compete agreement that he believed to be similar to his own. (Pl.'s Statement of Undisputed Facts ¶ 8.) On or about November 15, 2013, Edwards, through counsel, notified Barnhart of the non-compete clause in Lack's contract, "and informed Barnhart that Edwards fully intend[ed] to pursue all its rights under the agreement including interference with a contractual relationship." (Am. Compl. ¶ 30.) Lack began working for Barnhart on or about December 16, 2013. (Id. ¶ 31.)

**B. Procedural History**

Edwards filed its Complaint on February 10, 2014 (ECF No. 1), and filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction on February 28, 2014 (ECF No. 11). The Court granted the TRO on March 5, 2014. (ECF No. 20.) The

Court enjoined Lack from continuing employment at Barnhart until a determination in this case was ultimately made. (Id. at 8.) Lack and Barnhart filed their respective Answers to the Complaint on March 25, 2014. (ECF Nos. 27, 28.)

Following two extensions of the TRO (ECF Nos. 30, 37), the Court entered an agreed Permanent Injunction as between Edwards and Lack on May 7, 2014. (ECF No. 50.) The agreed injunction restrains Lack from working on any "rigging and/or heavy hauling projects/assignments that are in the bidding or pre-award phases" until March 5, 2016. (Id.)

Edwards filed an Amended Complaint on July 18, 2014 (Am. Compl.), and Barnhart answered on August 14, 2014 (Answer to Am. Compl., ECF No. 58).

Edwards filed its Motion for Summary Judgment on January 12, 2015. (ECF No. 60.) Barnhart responded on February 12, 2015. (ECF No. 67.) Edwards filed a reply brief on February 27, 2015. (ECF No. 79.)

Barnhart filed its Motion for Summary Judgment on January 16, 2015. (ECF No. 64.) Edwards responded on February 16, 2015. (ECF No. 72.) Barnhart filed its reply brief on March 4, 2015. (ECF No. 81.)

The Court held a hearing on the motions for summary judgment on April 3, 2015. (Min. Entry, ECF No. 90.) With leave of Court, Edwards filed a Supplemental Brief Regarding

Consequential Damages on April 8, 2015. (ECF No. 86.) Barnhart responded on April 10, 2015. (ECF No. 87.) Edwards filed a reply on April 27, 2015. (ECF No. 92.) On June 24, 2015, the Court granted Plaintiff's motion for summary judgment and denied Defendant Barnhart's motion, but found "that the record [was] not clear as to the particular amount of damages the Plaintiff has suffered." (ECF No. 94 at 20.)

The Court held a bench trial on the issue of damages on September 9, 2015. (Min. Entry, ECF No. 109.) Edwards was represented by Jennifer Hatcher and James L. Holt, Jr. Barnhart was represented by Scott Frick. Edwards presented one witness, Billy Watts, Jr., vice president of operations of Edwards Moving & Rigging. (See ECF No. 109; ECF NO. 110.) Edwards also offered two exhibits, one of which the Court received and entered into evidence and the other of which was marked for identification only. (See ECF No. 110.) Barnhart called no witnesses and offered one exhibit, which the Court received and entered into evidence. (ECF Nos. 109, 110.)

For the reasons set forth below, the Court finds that Edwards is entitled to $75,177.00 in total damages based on the $25,059.00 in attorneys' fees Edwards incurred in bringing the action against Lack, trebled pursuant to section 47-50-109 of the Tennessee Code.

## II. FINDINGS OF FACT

### A. Uncontested Facts

Below are the uncontested facts from the parties' Joint Pretrial Order:

1. Edwards incurred attorney's fees and expenses in connection with the prosecution of its noncompetition agreement between Plaintiff and Defendant Lack.

2. Edwards brought claims against Lack and Barnhart in the same action.

(ECF No. 107 at 5.)

### B. Testimony and Evidence Introduced at Trial

#### 1. Evidence

Edwards offered two exhibits, one of which the Court marked and entered into evidence: Exhibit 1, Invoices Submitted to Edwards Moving (Collective). Edwards' Exhibit 2, Modified Invoices Submitted to Edwards Moving (Collective), was marked for identification only. Barnhart offered one exhibit, which the Court marked and entered into evidence: Exhibit 3: Invoices Submitted to Edwards Moving (Collective).

#### 2. Billy Watts, Jr.

Plaintiff called one witness, Billy Watts, Jr. ("Watts"). Ennis testified that he is the vice president of operations of Edwards and has worked for Edwards for seven years. He explained that he is involved in the day-to-day operations of the company. Watts testified that, although he is not the final

5

authority on approving attorneys' fees, he is part of the conversation regarding fees and reviews the invoices to make sure the charges are legitimate. Watts explained that he reviewed the invoices in this case, as well as a similar case based out of Virginia for which Edwards also employed the firm Ackerson & Yann. The invoices provided to him in the instant matter appeared to be very similar to those provided in the Virginia case. He further testified that the bills in the instant matter were appropriate and consistent with what Edwards has paid to Ackerson & Yann for the seven years Watts has been with Edwards.

With respect to the payment to local counsel, Watts testified that Ackerson & Yann paid local counsel's bills and then billed Edwards for the appropriate amount. Watts testified that his understanding was that the bills at issue related to legal services for enforcing the non-competition agreement against Lack. According to Watts, Edwards' focus from January 20, 2014, through May 7, 2014, was the claim against Lack. Watts testified that he was not involved in conversations about the tortious interference claim against Barnhart.

On cross-examination, Watts acknowledged that he does not remember whether the individual time entries were on the original bill he received. When Barnhart presented him with Exhibit 3, Watts could not recall whether the bills contained in

6

that exhibit were the ones received by Edwards.  Watts testified that, nevertheless, he could determine whether a bill is reasonable, even without time entries, by comparing it to other bills received from Ackerson & Yann.  Watts also acknowledged that the bill does not identify who was working on the file, but Watts explained that he knew who was working on the file.  Watts testified that, because he did not see the invoices from local counsel, he could say that those bills were reasonable only to the extent that he discussed them with John Vaughan, the financial administrator for Edwards, and compared them to past fees.  Watts again testified that between January 2014 and May 8, 2014, the majority of the conversations were about the claims against Lack, and if there were conversations about the claims against Barnhart, they were limited.  Watts could not say for sure, however, that no one at Edwards ever spoke with the attorneys about settling the claims with Barnhart.

On re-direct, Watts testified that he reviewed the Complaint before it was filed.  According to Watts, the majority of the Complaint related to Lack, his position in the company, and his involvement in various projects.  Watts testified that he was not aware of any unique facts relating only to the claim against Barnhart.  According to Watts, Edwards received the value of the legal services it paid for in this matter.

**III. CONCLUSIONS OF LAW**

The Court has already determined that Edwards is entitled to damages related to Barnhart's tortious interference with contract. (See ECF No. 94 at 20.) The Court now considers the appropriate amount of damages.

Edwards argues that it is entitled to $60,100.21 in attorneys' fees, $3,684.00 for loss of time by its employees/officers, and $324.29 in travel expenses. (ECF No. 101 at 3-4.) Edwards also seeks an additional $192,325.23 for treble damages pursuant to Tenn. Code Ann. § 47-50-109. (Id. at 4-5.)

**A. Attorneys' Fees and Other Expenditures**

Under Tennessee law, "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action." Engstrom v. Mayfield, 195 F. App'x 444, 451 (6th Cir. 2006) (quoting Pullman Standard, Inc. v. Abex Corp., 693 S.W.2d 336, 340 (Tenn. 1985)). Thus, in an action for tortious interference with contract, a plaintiff is entitled to expenditures, including attorneys' fees, that (1) were incurred in the related breach of contract action and (2) are reasonable.

8

1. **Incurred in the Earlier Action**

The Tennessee Supreme Court has not clearly defined when an attorney's fee or other expenditure is considered to have been "incurred in the earlier action" in this context. Lower courts in Tennessee have looked to the United States Supreme Court's decision in Hensley v. Eckerhart, 461 U.S. 424 (1983) for guidance.

In Hensley v. Eckerhart, the United States Supreme Court developed a framework for evaluating attorneys' fees in the context of claims pursuant to 42 U.S.C. § 1988. The Court held:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." . . .
>
> . . . In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.

> . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

Id. at 434-35; see also Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 554 (6th Cir. 2008).

Tennessee courts have adopted this framework for claims for attorneys' fees brought under the Tennessee Human Rights Act and Tennessee Consumer Protection Act. See Keith v. Howerton, 165 S.W.3d 248, 251-52 (Tenn. Ct. App. 2004); Lowe v. Johnson Cnty., No. 03A01-9309-CH-00321, 1995 WL 306166, at *7-8 (Tenn. Ct. App. May 19, 1995). In Brunsting, the Court of Appeals of Tennessee adopted this framework in the context of a contract provision that provided for attorneys' fees incurred in enforcing the contract. The court concluded that "when a case consists of distinct and severable claims[,] the Courts must apply a proportionality approach" and should separate out attorneys' fees as to each claim. Brunsting v. Brown, No. M2000-00888-COA-R3-CV, 2001 WL 1168186, at *8 (Tenn. Ct. App. Oct. 4, 2001) (quoting JDFJ Corp. v. Int'l Racing, Inc., 970 P.2d 343, 347 (Wash. Ct. App. 1999)). When there is "a common core of facts involved," however, the case cannot be evaluated "as a series of discrete claims." Id. In this event, a court may award attorneys' fees by looking at the case as a whole, rather than breaking it down into segments. Id. (affirming award of all attorneys' fees incurred in enforcing a contract, as provided in

the contract provision, although plaintiff prevailed on only some of his claims).

The contract provision in Brunsting provided for "all costs and expenses incurred by the other party in enforcing or establishing its rights hereunder, including, without limitation, court costs and reasonable attorneys' fees." Id. at *6. In the instant matter, Edwards is analogously entitled to "reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action." Engstrom, 195 F. App'x at 451 (quoting Pullman, 693 S.W.2d at 340). As the above-mentioned courts have recognized, it is not feasible to separate out attorneys' fees incurred in pursuit of two claims where the claims are based on a "common core" of facts and related legal theories. Where claims are so intertwined, a court should award attorneys' fees by looking at the case as a whole. See Hensley, 461 U.S. at 434-35; Brunsting, 2001 WL 1168186, at *8.

Edwards' claims for breach of contract and tortious interference with contract are based on a "common core" of facts and related legal theories. The claim that Barnhart wrongfully interfered with the contract between Edwards and Lack is fundamentally premised on the facts that (1) Edwards and Lack had a non-competition agreement and (2) Lack breached that agreement by working for Barnhart. Before the entry of a

permanent injunction against Lack on May 7, 2014, these claims were inextricable, and accordingly, much of the services rendered by Edwards' attorneys for the claim against Barnhart cannot be separated from the services rendered for the claim against Lack. To the extent that Edwards' attorneys rendered services related to the common core of facts and related legal theories of the two claims, the Court concludes that these services were rendered in pursuit of the action against Lack.

There are, however, several time entries where Ackerson & Yann was able to, and did, separate out its services rendered for the claims against Barnhart and Lack. Specifically, on February 12, 2014, Edwards' counsel discussed Barnhart's interest in settlement (Ex. 1 at 1); on February 19, 2014, Edwards' counsel reviewed a letter from Barnhart's counsel (Ex. 1 at 2); on February 21, 2014, Edwards' counsel emailed Jim Holt regarding the letter from Barnhart's counsel (Ex. 1 at 2); on May 5, 2014, Edwards' counsel reviewed an offer from Barnhart (Ex. 1 at 12); and on May 7, 2014, Edwards' counsel conferred regarding research and researched and drafted a memorandum on tortious interference (Ex. 1 at 13) ("the Barnhart time entries"). The Court concludes that these tasks were performed solely to advance the claim against Barnhart, and accordingly, Edwards did not incur the related attorneys' fees in pursuit of its claim against Lack.

Several of the Barnhart time entries include multiple tasks, including tasks pertaining to the claim against Lack. To the extent that the entries relate to the claim against Lack, however, they are unreasonable because the stated number of hours spent is excessive, see infra Part III.B. The Barnhart time entries relate to 10.5 hours of work performed by Jennifer Hatcher and 5.5 hours of work performed by JJB, in total, $3,865.00 in attorneys' fees. Edwards is not entitled to compensation for these attorneys' fees.

Based on the evidence presented at trial, including the specific tasks stated in the time entries, the Court concludes that all other services rendered by Ackerson & Yann, PLLC between January 20, 2014, and May 7, 2014, were performed in pursuit of the claim against Lack.[1]

Additionally, Edwards asserts that it incurred $3,684.00 for the loss of time by its employees/officers and $324.29 in gas, food, and hotel expenses associated with employee Danny Cain's travel to Memphis related to the enforcement action against Lack. (ECF No. 101 at 4.) Edwards did not, however, present proof of the loss of time or other expenditures or their relation to the claim against Lack at trial. Accordingly, the

---

[1] Edwards did not introduce the time entries for services rendered by Jackson, Shields, Yeiser & Holt ("JSYH" or "local counsel"). The Court need not determine whether the attorneys' fees paid to JSYH were incurred in the action against Lack, however, because Edwards failed to demonstrate that these fees were reasonable, see infra Part III.B.

13

Court cannot discern that these costs were incurred in pursuit of the claim against Lack. Edwards is not entitled to compensation for the loss of time by its employees or other expenditures.

**2. Reasonableness**

After adjusting Edwards' request for damages, the Court considers whether the remaining $56,235.21 sought by Edwards is reasonable.

"There is no fixed mathematical rule" for determining a reasonable attorney's fee in Tennessee. Lowe, 1995 WL 306166, at *2. The Supreme Court of Tennessee has held that the appropriate factors in determining the reasonableness of an attorney's fee include:

> (1) the time devoted to performing the legal services;
> (2) the time limitations imposed by the circumstances;
> (3) the novelty and difficulty of the legal issues and the skill required to perform the service; (4) the fee customarily charged in the locality for similar services; (5) the amount involved and the results obtained; and (6) the experience, reputation, and ability of the attorney.

Hometown Folks, LLC v. S & B Wilson, Inc., 643 F.3d 520, 535 (6th Cir. 2011) (citing Connors v. Connors, 594 S.W.2d 672, 676 (Tenn. 1980)); see also Tenn. Sup. Ct. R. 8 (setting forth substantially similar guidelines).

As an initial matter, the Court is unable to discern whether the fees paid to JSYH were reasonable. Edwards

14

presented no evidence as to what tasks were performed by JSYH. Watts did not see the bills from JSYH and, therefore, was not qualified to testify as to their reasonableness. Edwards presented only the invoices of Ackerson & Yann, which included a monthly line item for services rendered by JSYH. This monthly line item does not provide any insight into the type of services rendered, whether the work was duplicative of that done by Ackerson & Yann, or whether the time spent or amount charged per task was appropriate. Because Edwards failed to present proof as to the reasonableness of these fees, Edwards is not entitled to compensation for the fees paid to JSYH.

After deducting the fees paid to JSYH, Edwards is left with a claim for $25,059.00[2] in attorneys' fees incurred in the claim against Lack. Watts testified that he had experience reviewing bills submitted by Edwards' attorneys, and the Court concludes that he is qualified to evaluate the reasonableness of the fees charged by Ackerson & Yann. Watt testified that the fees charged to by Ackerson & Yann were comparable to those charged to Edwards in similar cases and were reasonable. In pursuit of the action against Lack, Ackerson & Yann devoted 103.8 total hours, filed several motions to compel discovery, obtained a

---

[2] This amount is based on a total of 103.8 hours of work by Ackerson & Yann between January 20, 2014 and May 7, 2014. This comprises 84 hours of work by Jennifer Hatcher at a rate of $245.00 per hour, 8.4 hours of work by WJC at a rate of $350.00 per hour, and 11.4 hours of work by CLB at $135.00 per hour. (See Ex. 1.)

15

temporary restraining order, and ultimately negotiated a settlement and permanent injunction against Lack. Additionally, Ackerson & Yann faced moderate time pressure related to Edwards' need to enforce the non-competition agreement against Lack. Considering these factors, the Court concludes that $25,059.00 in attorneys' fees is very reasonable.

Accordingly, Edwards demonstrated that it incurred $25,059.00 in reasonable attorneys' fees in bringing the action against Lack.

### B. Treble Damages

In its First Amended Complaint, Edwards sought an award of "[p]unitive and/or treble damages pursuant to Tenn. Code Ann. [§] 47-50-109." (Am. Compl. at 8.) "In the event that a plaintiff successfully asserts a cause of action under Tennessee Code Annotated section 47-50-109 as well as a punitive damages claim in the common law action for tortious interference with contract, plaintiff is required to elect between remedies." Buddy Lee Attractions, Inc. v. William Morris Agency, Inc., 13 S.W.3d 343, 355 (Tenn. Ct. App. 1999). At trial, Edwards abandoned its punitive damages claim and argued only for treble damages pursuant to section 47-50-109. Accordingly, Edwards has successfully asserted only a claim for treble damages and is not entitled to elect between remedies.

Section 47-50-109 of the Tennessee Code provides:

> It is unlawful for any person, by inducement,
> persuasion, misrepresentation, or other means, to
> induce or procure the breach or violation, refusal or
> failure to perform any lawful contract by any party
> thereto; and, in every case where a breach or
> violation of such contract is so procured, the person
> so procuring or inducing the same shall be liable in
> treble the amount of damages resulting from or
> incident to the breach of the contract. The party
> injured by such breach may bring suit for the breach
> and for such damages.

Tenn. Code Ann. § 47-50-109.

The Court has already determined that Barnhart tortiously interfered with Edwards' contract with Lack. (See ECF No. 94.) Accordingly, Edwards is entitled to treble damages under section 47-50-109.

Edwards contends that it is entitled to treble damages <u>in addition to</u> the attorneys' fees incurred in the action against Lack. (See ECF No. 101 at 4-5.) The statute provides, however, that the person procuring the breach "be liable in treble." Tenn. Code Ann. § 47-50-109; see also B & L Corp. v. Thomas & Thorngren, Inc., 162 S.W.3d 189, 221 (Tenn. Ct. App. 2004) ("B & L is entitled to recover $25,131.28 . . . . Pursuant to T.C.A. § 47-50-109 (2001), this amount must be trebled for a total award of $75,393.84."). The Court finds that Edwards incurred $25,059.00 in bringing the action against Lack. Pursuant to Tenn. Code Ann. § 47-50-109, this amount must be trebled for a total award of $75,177.00.

**IV. CONCLUSION**

For the foregoing reasons, the Court finds that Edwards is entitled to $75,177.00 in total damages based on the $25,059.00 in attorneys' fees Edwards incurred in bringing the action against Lack, trebled pursuant to section 47-50-109 of the Tennessee Code.

**IT IS SO ORDERED**, this 25th day of November, 2015.

/s/ Jon P. McCalla
JON P. McCALLA
U.S. DISTRICT COURT JUDGE